IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SHAQUAILAN S. WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 05-1080-T/An |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER REVERSING COMMISSIONER'S DECISION AND
REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

This action was filed on behalf of the plaintiff, Shaquailan S. Walker, to obtain judicial review of the defendant Commissioner's final decision denying an application for child's supplemental security income benefits based on disability under 42 U.S.C. § 1381 *et seq.* Plaintiff's mother, Eureka Walker, filed the application for benefits on her behalf, with a protective filing date of August 28, 2002. The application was denied initially and upon reconsideration by the Social Security Administration. A hearing was held before an Administrative Law Judge (ALJ) on February 26, 2004. On August 30, 2004, the ALJ issued a decision finding that plaintiff was not disabled, and the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision became the final decision of the Commissioner. The present complaint was subsequently filed on plaintiff's behalf, seeking review of the Commissioner's final decision.

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied.  See 42 U.S.C. § 405 (g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Commissioner of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Drummond v. Commissioner of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Cutlip v. Secretary of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994).  Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Her, 203 F.3d at 389; Drummond, 126 F.3d at 840; Cutlip, 25 F.3d at 286.  The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility.  Walters, 127 F.3d at 528 (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip, 25 F.3d at 286.  In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion.  Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286). If reversal is warranted, a court may immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  Faucher v. Secretary of Health and Human Serv., 17 F.3d 171, 176 (6th Cir. 1994).

On the date of the administrative hearing the plaintiff was thirteen years of age, and was in the fifth grade.  It was alleged that she became disabled on July 4, 2002, due to a hip injury that required pins in both hips, attention deficit hyperactivity disorder ("ADHD"), and obesity.  (R. 17.)  In his decision, the ALJ made the following findings:  (1) plaintiff was

2

born on November 7, 1990; (2) plaintiff has never engaged in substantial gainful activity; (3) plaintiff has borderline intellectual functioning, ADHD and obesity, which meet the definition of "severe" under the Social Security Act; (4) plaintiff's impairments do not, either singly or in combination, meet or medically or functionally equal a listed impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (5) plaintiff does not have an impairment or combination of impairments which results in marked and severe functional limitations; (6) the testimony at the hearing was not fully credible; (7) the plaintiff has less than marked limitation in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating with others," but these limitations do not reach a disabling level in any domain of functioning; and (8) plaintiff has not been under a disability as defined by the Act at any time since July 4, 2002.

For an individual who is under eighteen years of age the Social Security Act defines disability as:

> (C)(i) . . . a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> (ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C)(i)-(ii). In determining disability in children, the Commissioner conducts a three-step sequential analysis, as set forth in 20 C.F.R. § 416.924:

> 1. A child who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings. 20 C.F.R. § 416.924(b).

>2. A child who does not have an impairment or combination of impairments that is severe, *i.e.*, that causes more than minimal functional limitation, will not be found to be disabled. 20 C.F.R. § 416.924(c).
>
>3. A child will be found disabled if she has an impairment or combination of impairments that meet, medically equal or functionally equal the listings. 20 C.F.R. § 416.924(d).

In this case, the ALJ found that the plaintiff's impairments did not meet, medically equal or functionally equal the listings. Plaintiff asserts that this decision is not supported by substantial evidence in the record. Specifically, plaintiff contends that the record contains substantial evidence that her impairments meet, medically equal or functionally equal the listing on mental retardation, 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.05D.

>Listing 112.05 provides, in pertinent part:
>
>112.05  Mental Retardation:  Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
>The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
>. . . .
>
>D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;

Listing 112.00 further provides: "Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, we will find that the child's impairment meets the listing." Listing 112.00, Mental Disorders, ¶ A, Introduction.

The evidence in the record shows that plaintiff fell out of bed on July 3, 2002,

resulting in bilateral slipped capital femoral epiphysis. She was admitted to LeBonheur Children's Medical Center on July 5, 2002, where pins were surgically inserted in each hip. She was discharged the same day, with arrangements made for a wheelchair and physical therapy. (R. 141-142, 144.) On August 9, 2002, plaintiff was ambulating without difficulty or pain, and x-rays showed excellent alignment and well-healed incisions. On September 11, 2002, it was noted that plaintiff had not yet been to physical therapy, and her mother was advised that therapy was needed. There was no musculo-skeletal tenderness, erythema or drainage, but there was some incisional pain. Plaintiff was prescribed Naproxen and her mother was told to call if the pain persisted or worsened. (R. 146-147.) Plaintiff testified at the hearing that her hips always hurt, but that the pain was worse at times than at other times; she stated that her mother gave her aspirin for the pain. Plaintiff also testified that the pins in her hips prevented her from running and playing. (R. 251-252, 255-256.) However, there is no medical evidence in the record regarding any further problems with plaintiff's hips, and no evidence that she ever had physical therapy.

On October 7, 2002, plaintiff was taken to Pathways of Tennessee, Inc., because she was having trouble coping with her limitations following the hip surgery. Plaintiff reportedly became upset and depressed when she could not play outside after school and engage in other activities. Her mother reported that plaintiff was having problems staying focused at school, failing to complete assignments, talking excessively and constantly being out of her seat. She reportedly found it difficult to follow directions, had poor impulse control and got into a lot of trouble at school. Plaintiff was diagnosed with ADHD, combined type and

5

adjustment disorder with depressed mood.  She was referred for medication evaluation and advised to begin counseling.  On October 28, 2002, plaintiff returned to Pathways and was prescribed Paxil and Adderall.  She displayed euthymic mood and appropriate affect and was oriented in all spheres.  Diagnoses were rule out ADHD, combined type and depressive disorder.  On November 26, 2002 the assessment was unchanged.  (R. 153-164.)

Plaintiff's Adderall was increased on March 13, 2003 after it was reported that she continued to have problems at school, including bad grades and fighting with other students.  It was also reported that plaintiff fought with her older brother at home, and her mother reported that she was defiant.  Subsequent visits were unremarkable until November 6, 2003, when plaintiff reported being off her medication for two months, and again making bad grades and disrupting her class.  She was taken off Paxil and given a prescription for Adderall.  On December 17, 2003, it was noted that services at Pathways had been discontinued due to noncompliance with keeping plaintiff's appointments and taking her medication as prescribed.  (R. 209-215.)

Plaintiff returned to Pathways on February 18, 2004, reporting that she had been without medication since January.  Her grades were falling and she was again getting into trouble at school.  Evaluation showed a neat appearance, intact memory and good thought content.  Plaintiff's was pleasant and cooperative and her speech was appropriate.  She reported good sleep and appetite.  (R. 218.)

On December 20, 2002, plaintiff underwent a consultative psychological evaluation by Robert Kennon, Ph.D.  Kennon noted that plaintiff was twelve years old and in the fourth

6

grade; she weighed approximately 175 pounds. Plaintiff was pleasant and fairly responsive, although somewhat sullen. She admitted that she had felt depressed; she reported crying spells, getting upset and mild sleep disturbance. Kennon found no indication of other clinical signs of depression or vegetative features. He also found no evidence of marked anger dyscontrol, rather, plaintiff tended to pout if she did not get her way. He saw no evidence of ADHD symptoms such as significant inattentiveness or distractibility. Plaintiff was a little inattentive, but did not display severe inattentiveness during the exam and appeared to try to work fairly diligently on the task at hand. (R. 166-169.)

Kennon administered the Wechsler Intelligence Scale for Children – Third Edition, on which plaintiff obtained a verbal IQ score of 65, performance IQ of 71 and full scale IQ of 65. Kennon diagnosed mild mental retardation, but stated that plaintiff obviously was functioning cognitively in the borderline mild mental retardation classification. He noted that plaintiff displayed very limited motivation, was having trouble coping with her placement at school, and felt overwhelmed. Kennon further observed that a lot of plaintiff's behavior problems appeared to be related to her limited ability to cope with or tolerate stress, and her limited social skills. Her primary difficulties appeared to be limited cognitive sophistication and her struggles at school, complicated by obesity. (R. 169-171.)

Plaintiff underwent an integrated psycho-educational evaluation by C. Stephen Way, a school psychologist, on December 16, 2003, due to academic performance considerably below grade level. Way noted that plaintiff's motivation was good and that she maintained good interest and effort. Her activity level was normal, she was cooperative, and her

attention and concentration were adequate for test administration.  Way administered the Stanford-Binet Intelligence Scale – Fourth Edition, on which plaintiff obtained a composite IQ score of 68, placing her within the slow learner classification.  Her scores on the Woodcock-Johnson III Academic Achievement Test placed her at the middle second grade level in basic reading recognition, the low third grade level in reading comprehension, the high fifth grade level in arithmetic calculation, the low fourth grade level in math reasoning, and the high third grade in written language; plaintiff's listening comprehension skills were considerably below average.  (R. 199-202.)

On the Vineland Adaptive Behavior Scales, plaintiff's adaptive behavior composite score was 73, which classified her general adaptive functioning as moderately low.  Way noted that one of plaintiff's classroom teachers observed that plaintiff had good thinking skills and could follow steps to solve problems, and that she was a good leader.  However, when plaintiff wanted to play and make everyone laugh, her grades would fall.  (R. 202.)

Based on the data obtained by Way, he stated that plaintiff appeared to meet the mentally handicapped criteria for special education services.  (R. 203.)  At the administrative hearing, plaintiff's mother testified that plaintiff was to begin resource education classes in four subjects the next Monday, and that two other subjects would be modified.  (R. 259.)

On February 25, 2004, plaintiff's teacher completed a questionnaire on which she indicated that plaintiff had no deficits in adaptive functioning when compared with unimpaired children of the same age.  (R. 204-206.)

The state agency medical consultants who reviewed the evidence in the record on

initial consideration and reconsideration opined that plaintiff's impairments did not meet, medically equal, or functionally equal the listings. In assessing functional equivalency, it was found that plaintiff had more than minimal limitations on her ability to perform age-appropriate activities in certain areas, but those limitations were less than marked. (R. 172-189.)

Plaintiff argues that substantial evidence in the record shows that she meets the listing on mental retardation, § 112.05D, because she has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." She relies on her IQ scores of 65 and 68, and the fact that the ALJ found that her severe impairments included ADHD and obesity. She also contends that the evidence shows that she suffers from deficits in adaptive functioning, as required by the diagnostic description in § 112.05. See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

The Commissioner argues that substantial evidence fails to show that plaintiff suffers from deficits in adaptive functioning that are sufficiently significant to meet the listing on mental retardation, citing to provisions of the DSM-IV requiring "significant" limitations in at least two areas of adaptive functioning. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, (4th Ed., 1994). Therefore, it is argued that plaintiff's impairments do not meet the requirements of § 112.05D. The difficulty with this argument is that the ALJ's "discussion" of whether plaintiff's impairments meet the listing is only one sentence: "The evidence reflects that the claimant's impairments do not, singly or in

combination, meet or equal any listed impairment in Appendix 1." (R. 21.)

The ALJ engaged in no discussion regarding the DSM-IV or other diagnostic criteria for assessing adaptive functioning, and whether plaintiff's impairments are sufficiently significant to meet those criteria. Instead, the ALJ discussed at length whether plaintiff's impairments <u>functionally</u> equal the listings, assessing whether plaintiff had "marked" or "extreme" limitations in any of the six areas or "domains" set forth in 20 C.F.R. § 416.926a.[1]

The Commissioner appears to contend that the criteria for determining whether a particular impairment or combination of impairments is of "listing-level" severity is the same as the criteria for determining whether that impairment or impairments is functionally equivalent to a listing. Thus, in the Commissioner's view, the same evidence cited by the ALJ with regard to functional equivalency would be sufficient to find that plaintiff's impairments also did not meet § 112.05D. That position is supported by this statement in the regulations:

> By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain . . . .

20 C.F.R. § 416.926a(a). However, the previous section of the regulations provides differently:

> Therefore, in general, a child's impairment(s) is of "listing-level severity" if

---

[1] In finding that plaintiff's impairments were not functionally equivalent to any listing, the ALJ relied heavily on the assessment by plaintiff's teacher. However, given the contradictory evidence in the record, the fact that plaintiff was thirteen years old and only in the fifth grade, and the statement by plaintiff's mother at the hearing that plaintiff was to begin special education classes in just a few days, the teacher's determination that plaintiff had no deficits at all in adaptive functioning does not appear reliable.

>it causes marked limitations in two broad areas of functioning or extreme limitations in one such area.  (See § 416.926a for definition of the terms marked and extreme as they apply to children.)  However, when we decide whether your impairment(s) meets the requirements for any listed impairment, <u>we will decide that your impairment is of "listing-level severity" even if it does not result in marked limitations in two broad areas of functioning, or extreme limitations in one such area, if the listing that we apply does not require such limitations to establish that an impairment(s) is disabling.</u>

20 C.F.R. § 416.925(b)(2) (emphasis added).[2]

The Court has closely examined the general explanatory paragraphs for § 112.00, mental disorders, and § 112.05 on mental retardation in particular.  There is no language whatsoever in those sections stating that the "deficits in adaptive functioning" specified in § 112.05 must be "marked" in two areas or "extreme" in one area in order to be of listing-level severity.[3]  Therefore, there are factual issues that remain to be resolved.

The Court concludes that the ALJ failed to adequately consider whether plaintiff's impairments, either singly or in combination, meet the listing on mental retardation, § 112.05D.  Therefore, the Commissioner's decision is hereby REVERSED and REMANDED for further administrative proceedings, including additional development of the record and a new hearing.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

---

[2] This language will not change when an amended version of § 416.925 goes into effect March 31, 2006.

[3] The Social Security regulations are, in general, very complex.  Nevertheless, due to the concept of functional equivalence, the regulations applicable to the determination of child disability appear to be particularly convoluted and confusing.

11

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE